UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-19-07

```
------------------------------------ X
BRIAN ROSNER, ESQ., RECEIVER FOR    :
INTERNATIONAL FINANCIAL SERVICES    :
(NEW YORK), INC., INTERNATIONAL     :
FINANCIAL SERVICES (NEW YORK) LLC,  :
JOHN WALKER ROBINSON, CHAN KOW LAI  :      06 CV 13562
a/k/a WILSON LAI AND SOCIEDADE      :
COMERCIAL SIU LAP LIMITADA,         :   DECISION AND ORDER
                                    :
                    Plaintiff,      :
                                    :
     - against -                    :
                                    :
BANK OF CHINA,                      :
                    Defendant.      :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Brian Rosner, Esq., ("Rosner") Permanent Equity
Receiver for International Financial Services ("IFS") (New
York), Inc., International Financial Services (New York) LLC,
John Walker Robinson, Chan Kow Lai a/k/a Wilson Lai and
Sociedade Comercial Siu Lap Limitada, brought this case
against the Bank of China ("BoC"), seeking actual,
consequential, and incidental damages for BoC's alleged aiding
and abetting common law fraud and for BoC's alleged violations
of the Racketeer Influenced and Corrupt Organizations Act, 18
U.S.C. § 1961, et seq., ("RICO"). Pursuant to Federal Rules
of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), 9(b) ("Rule
9(b)"), and 12(b)(6) ("Rule 12(b)(6)"), BoC moves to dismiss
Rosner's claims on several grounds, including lack of subject
matter jurisdiction, failure to allege fraud with

particularity, and failure to state a claim upon which relief

can be granted with respect to the RICO allegations.

By Order dated September 26, 2007, the Court granted

BoC's motion to dismiss and indicated that its findings,

reasoning, and conclusions would be set forth in a subsequent

decision and order. Accordingly, for the reasons set for

below, BoC's Motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

### A.   FACTUAL AND PROCEDURAL HISTORY

Rosner was appointed Receiver for the entities and

persons listed in the caption of this case (collectively, the

"IFS Defendants") in connection with a proceeding brought

against them by the Commodities Futures Trading Commission

("CFTC"). (See Consent Order of Preliminary Injunction, dated

Aug. 8, 2002, attached as Ex. C to the Corrected Complaint

("Consent Order").) As discussed in more detail below, the

IFS Defendants were found to have perpetrated a massive fraud

involving the theft of approximately $25 million from IFS

investors. (See Commodity Futures Trading Comm'n v. Int'l

Fin. Servs., 323 F. Supp. 2d 482 (S.D.N.Y. 2004), attached as

Ex. D to the Corrected Complaint ("Commodity Futures").)

---

[1] The following facts are taken from Rosner's Corrected
Complaint, which the Court accepts as true for the purpose
of ruling on the motion to dismiss. See Chambers v. Time
Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing
Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).

-2-

As Permanent Equity Receiver for the IFS Defendants, Rosner was given the "full powers of an equity receiver," and "directed and authorized to ... initiate any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of the Receivership Defendants." (Consent Order 8-9.) Pursuant to this power, Rosner brought this action against BoC alleging that BoC's actions aided and abetted the common law fraud perpetrated on the IFS investors, and violated RICO.

BoC is a commercial bank primarily owned by the People's Republic of China with its principal place of business in Beijing, China. It maintains three branches in the United States, including one in New York City, and has one branch in Macau, a Special Administrative Region of the People's Republic of China.

## B. THE FRAUDULENT ENTERPRISE

On July 17, 2002, the CFTC filed a civil complaint against International Financial Services, Inc. ("IFS Inc.") and Sociedade Comercial Siu Lap Limitada ("Siu Lap") in the Southern District of New York, and moved for summary judgment. See Commodity Futures, 323 F. Supp. 2d at 491. In Commodity Futures, the Court granted CFTC's motion for summary judgment, and found that the IFS Defendants had built a fraudulent enterprise that stole more than $25 million from IFS

investors. See id. at 488, 502-503. Specifically, the Commodity Futures Court found that IFS Inc. conducted illegal off-exchange trades, in violation of 7 U.S.C. § 6(a)(1), committed fraud in violation of 7 U.S.C. § 6b(a), and engaged in unauthorized trading on customer accounts in violation of 7 U.S.C. § 6b(a)(iv). See id. at 499-504. The Court entered a judgment of more than $100 million in treble damages. (Corrected Complaint ¶ 47.)

Under the fraudulent scheme, found by the Court in Commodity Futures, Siu Lap funded IFS Inc. with an initial wire transfer on September 16, 1998. IFS Inc. then hired inexperienced currency traders as independent contractors, grouped the traders by their ethnicity, and encouraged them to solicit customers from their respective ethnic communities. The solicitation materials provided by IFS Inc. and the oral representations made by the independent contractors misled prospective customers by representing that foreign currency trading offered a very high potential for returns and only minimal risk of loss. These contractors opened 820 customer accounts with $32 million to invest.

IFS Inc.'s trading procedures made it virtually impossible for its clients to profit from their investments because traders were required to quote inflated prices provided by Siu Lap for the foreign currencies. As the

-4-

investors were forced to "buy" foreign currencies at these artificially inflated prices, their accounts would inevitably lose value because the currencies could not be "sold" for a higher price than the one provided by Siu Lapp. Additionally, since IFS Inc. and Siu Lapp knew that the clients' positions would result in losses, it was unlikely that any trades were ever in fact executed, particularly given that neither IFS nor Siu Lapp had dealing lines or accounts with any participants of the inter-bank foreign currency markets. Meanwhile, IFS Inc. issued statements to the individual investors showing major trading losses. In its opinion, the Commodity Futures Court summarized the scheme as follows:

> In short, IFS Inc. apparently accepted thousands of dollars in client funds, issued them statements purportedly showing trading losses, and sent the money to an overseas account holder, Siu Lap, which may well have been no more than an entity that received the stolen funds.

323 F. Supp. 2d at 489.

## C. BoC'S ALLEGED ROLE IN THE FRAUDULENT ENTERPRISE

BoC provided banking services to the IFS Defendants, including wire transfers for the initial funding of IFS Inc. and wire transfers of the IFS investors' funds from the United States to Macau. Specifically, BoC provided the following services: once the IFS investors provided funds to IFS Inc., IFS Inc. transferred the funds to its account at Citibank. Upon IFS Inc.'s request, the funds were transferred IFS Inc's

Citibank account through the Citibank account of BoC's New York branch to Siu Lap's United States dollar ("USD") account at BoC's Macau branch. BoC's Macau branch then transferred the funds between accounts, and converted them from USD to Hong Kong dollars ("HKD"). On the same day that each transfer became available in Macau, Siu Lap withdrew the funds in cash from the BoC HKD account. Thirty-eight transfers and withdrawals were conducted in this manner between January and July 2002, many in excess of $100,000.

Rosner alleges that BoC knew about the fraudulent scheme and its role in the fraudulent scheme, and knowingly used its correspondent relationships with United States banks to transfer the stolen funds. Rosner alleges that BoC disregarded applicable laws and regulations that, if followed, would have prevented the laundering of the IFS Investors' funds. Specifically, Rosner claims that BoC failed to comply with domestic and international bank secrecy, know-your-customer, and anti-money laundering laws, decrees, and regulations, and that BoC was a knowing and willing participant in the fraudulent scheme and provided the banking services necessary to effectuate the transfer of the stolen funds.

## II. **DISCUSSION**

### A.   SUBJECT MATTER JURISDICTION

BoC moves to dismiss Rosner's claims for lack of subject matter jurisdiction, pursuant Rule 12(b)(1), arguing that, as an instrumentality of a sovereign nation, BoC is immune from suit under the Foreign Sovereign Immunities Act, 29 U.S.C. § 1601 et seq. ("FSIA"). The Court agrees with Rosner, and finds that  sovereign immunity is inapplicable, as BoC's actions regarding the transfer and withdrawal of funds fit within the FSIA's exception for commercial activity.

#### 1.   Legal Standard

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction to adjudicate the allegations in the complaint. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). In considering the motion, the Court must "accept as true all material factual allegations in the complaint." Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court is not obligated to draw inferences from the pleadings and other submissions favorable to the party asserting jurisdiction.

The FSIA provides that foreign states shall be immune from the jurisdiction of the courts of the United States,

-7-

unless any one of several statutorily defined exceptions applies. See 28 U.S.C. § 1604. These exceptions under the FSIA are "the sole source for subject matter jurisdiction over any action against a foreign state." Cabiri v. Government of the Republic of Ghana, 165 F.3d 193, 196 (2d Cir. 1999). "When one of these exceptions applies, the foreign government is stripped of immunity, and pursuant to 28 U.S.C. § 1330(a), subject matter jurisdiction exists in the district court." Walkover, Inc. v. Republic of Argentina, 941 F.2d 145, 148 (2d Cir. 1991). In Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993), the Second Circuit set forth the burden of persuasion for a finding of subject matter jurisdiction under the FSIA. If a defendant challenges the factual basis for a plaintiff's jurisdictional claim, the plaintiff has the burden of proof to demonstrate that under the exceptions set forth in the FSIA, immunity should not be granted. If the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue, the district court must "resolve disputed issues of fact, with the defendant sovereign shouldering the burden of persuasion." Robinson v. Government of Malaysia, 269 F.3d 133, 144 (2d Cir. 2001) (quoting Cargill, 991 F.2d at 1016).

2. Discussion

Rosner does not dispute that BoC is a foreign state

-8-

within the meaning of the FSIA. See 28 U.S.C. § 1603(a) ("A 'foreign state' ... includes ... an agency or instrumentality of a foreign state."). Thus, BoC is "presumptively immune from the jurisdiction of United States courts unless a specified exception applies." Kensington Int'l Ltd. v. Itoua, 505 F.3d 147, 154 (2d Cir. 2007) (quoting Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993)).

In this case, Rosner argues that the action falls under the "commercial activity" exception to foreign sovereign immunity under 28 U.S.C. § 1605(a)(2), which provides that a foreign state is not immune from any suit in any case

> in which the action is based upon (I) a commercial activity carried on in the United States by the foreign state; or (ii) upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (iii) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes direct effect in the united States.

A plaintiff need only show one of these conditions is met for the commercial activities exception to apply. See Kensington, 505 F.3d at 154. The Supreme Court has instructed that the "action must be 'based upon' some 'commercial activity' by [a defendant] that had 'substantial contact' with the United States within the meaning of the [FSIA]." Nelson, 507 U.S. at 356. The Nelson Court elaborated on the commercial activity exception, stating that "the phrase [based upon] is read most

-9-

naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory." Id. at 357. The Second Circuit has further explained that to sustain jurisdiction on this basis, there must be "a significant nexus ... between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action." Reiss v. Société Centrale du Groupe des Assurances Nationales, 235 F.3d 738, 747 (2d Cir. 2000).

With these principles in mind, and accepting as true all of Rosner's factual allegations in the Corrected Complaint, it is clear that the BoC is not immune under the FSIA, as the action falls directly within the commercial activities exception to the FSIA. Rosner alleges that BoC participated in a fraudulent enterprise by providing the banking services necessary to allow the removal of stolen funds from the United States. It is not disputed that BoC, in its business as a bank operating in the United States, is the entity that effectuated the transfer of funds from the United States to Macau.

BoC relies on Human Rights in China v. Bank of China, No. 02 Civ. 4361, 2005 WL 1278542 (S.D.N.Y. May 27, 2005), for the proposition that the mere transfer of funds from the United States to China is not sufficient to trigger the commercial activities exception to the FSIA. However, there are two key

-10-

factors that distinguish the instant action from Human Rights in China. In that case, the only activity at issue was the single transfer of $20,000 through BoC's account at Chase Bank in New York to a BoC account in Beijing. First, here Rosner alleges that BoC was an active participant in a fraudulent scheme that took place almost entirely in the United States, and defrauded many persons residing in the United States. Additionally, while Human Rights in China involved only one transfer, this case involves a series of transfers that Rosner alleges demonstrates BoC's substantial involvement in the scheme.

The "substantial contact," "based upon," and "significant nexus" requirements are satisfied, as a significant portion of the commercial activity for which Rosner seeks to hold BoC liable occurred in the United States. This is not a case in which a plaintiff is seeking to apply the commercial activity exception because a tangential part of the alleged action took place in the United States. Rather, here the allegation is that BoC aided and abetted fraud and violated RICO by providing extensive banking services in the United States, to customers in the United States, that enabled the stolen funds of persons residing in the United States to be transported to Macau.

Accordingly, BoC's motion to dismiss for lack of subject matter jurisdiction is denied, and the Court has subject

-11-

matter jurisdiction to address BoC's remaining grounds of its motion to dismiss.

## B. FAILURE TO PLEAD FRAUD WITH PARTICULARITY

BoC moves to dismiss the Complaint for failure to plead fraud with particularity as required by Rule 9(b), which states that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus conclusory allegations of fraud may be dismissed under Rule 9(b). See Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971). The Second Circuit has "construed Rule 9(b) strictly in order to minimize strike suits, to protect defendants ... from harm to their reputation resulting from ungrounded actions, and to give defendants notice of the precise conduct in issue." Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir. 1982).

Rule 9(b) also provides that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." A more general standard of scienter is applicable because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." Wight v. Bank America Corp., 219 F.3d 79, 91 (2d Cir. 2000) (citing Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)). However, "the relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory

allegations." Shields v. CityTrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks and citations omitted). The plaintiff must provide some minimal factual basis for allegations of scienter that give rise to a strong inference of fraudulent intent. See Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995).

A complaint may give rise to a strong inference of fraudulent intent in two ways. First, the plaintiff may allege "a motive for committing fraud and a clear opportunity for doing so." Id. (quoting Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987)). Second, where there is no apparent motive, it is also possible to plead scienter by "identifying circumstances indicating conscious behavior by the defendant," but "the strength of circumstantial allegations must be correspondingly greater." Id.

The Second Circuit has applied the heightened pleading requirements of Rule 9(b) to claims for aiding and abetting fraud. See id. To establish liability for aiding and abetting fraud, a plaintiff must show "(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." Lerner, 459 F.3d at 292 (quoting JP Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005)). Thus, actual, not constructive, knowledge

-13-

is required to impose liability on an aider and abettor.
Lerner, 459 F.3d at 292. Generally, "substantial assistance"
exists where: (1) a defendant "affirmatively assists, helps
conceal, or by virtue of failing to act when required to do so
enables the fraud to proceed," and (2) "the actions of the
aider/abettor proximately caused the harm on which the primary
liability is predicated." Cromer v. Berger, 137 F. Supp. 2d
452, 470 (S.D.N.Y. 2001) (citing Diduck v. Kaszycki & Sons
Contractors, Inc., 974 F.2d 270, 284 (2d Cir. 1992)); Nigerian
Nat'l Petroleum Corp. v. Citibank, N.A., No. 98 Civ. 4960,
1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999); Kolbeck v. LIT
Am., Inc., 939 F. Supp. 240, 249 (S.D.N.Y. 1996).

### 1. Existence of a Fraud

The first element of aiding and a betting fraud is the
existence of an underlying fraud. In the present case, Rosner
alleges that BoC aided and abetted the scheme to defraud IFS
investors. Given the clear record that establishes the fraud
perpetrated on the IFS investors, Rosner has adequately pled
the existence of an underlying fraud.

### 2. Actual Knowledge

The second element of aiding and a betting fraud is the
defendant's actual, not constructive, knowledge of the fraud.
Rosner's factual allegations underlying his assertion that
BoC had actual knowledge of the fraud are that the teller in
Macau from whom Siu Lapp withdrew the funds would have seen

-14-

that the "accounts had no activity other than the repeated receipt of incoming fund transfers from the United States and the cash withdrawal of large amounts of cash," and would have known from "publicly available documents" that "these transactions were inconsistent with Siu Lapp's alleged business." (Corrected Complaint ¶¶ 57-58). However, these factual allegations would indicate, at most, only constructive knowledge of a fraudulent scheme, and are insufficient to support an allegation that BoC had actual knowledge of an underlying fraud. See Mazzaro de Abreu v. Bank of Am. Corp., No. 06 Civ. 673, 2007 WL 2609535, at *5 (S.D.N.Y. Sept. 10, 2007).

Actual knowledge may also be implied from a strong inference of fraudulent intent. However, the Corrected Complaint fails to allege any motive on the part of BoC. The only possible motive that may be discerned from the Corrected Complaint is BoC's interest in charging fees for the wire transfers. Courts in this Circuit have held that "a plaintiff must allege more than an interest in bank fees to create a reasonable inference of fraudulent intent." Id. (quoting Renner v. Chase Manhattan Bank, No. 98 Civ. 926, 2000 WL 781081, at *13 (S.D.N.Y. June 16, 2000) (citing Chill v. General Electric Co., 101 F.2d 263, 268 (2d Cir. 1996) ("[S]uch a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently

concrete for purposes of inferring scienter." (internal quotations omitted))).

Rosner provides no factual basis for the assertion that BoC had actual knowledge of the fraud, and accordingly, his aiding and abetting claim must be dismissed pursuant to Rule 9(b) for failure to plead fraud with particularity.

### 3. Substantial Assistance

Even if Rosner had established BoC's actual knowledge of the fraud, BoC's actions did not rise to the level of providing "substantial assistance." The Corrected Complaint details how the funds were transferred to Macau through BoC, but gives no evidence that BoC was doing anything more than providing its usual banking services to a customer, and "the 'mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance.'" Mazzaro, 2007 WL 2609535 at *7 (quoting Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., No. 98 Civ. 4960, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999) (citing Williams v. Bank Leumi Trust Co., No. 96 Civ. 6695, 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997))). Financial transactions that are not considered "atypical" or "non-routine" do not constitute substantial assistance. See Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 470-72 (S.D.N.Y. 2001) (holding that a clearing broker does not provide substantial assistance to or

-16-

participate in a fraud when it merely clears trades, and cases involving atypical and non-routine transactions are not applicable in this context).

Rosner also contends that BoC failed to comply with domestic and international bank secrecy, know-your-customer, and anti-money laundering laws, decrees, and regulations. However, even if true, such violations of law do not elevate BoC's actions into the realm of "substantial assistance." See Mazzaro, 2007 WL 2609535, at *7 ("A violation of a federal regulation ... does not [in and] of itself constitute substantial assistance."). As such, Rosner fails to allege that BoC was the proximate cause of any injuries suffered by the IFS investors.

Accordingly, Rosner's fraud claim against BoC must be dismissed pursuant to Rule 9(b), as Rosner has failed to plead fraud with particularity. However, the Court will grant Rosner leave to replead his fraud claim within fifteen days of this Order.

## C. FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF RICO CLAIM

BoC moves to dismiss plaintiff's RICO claim pursuant to Rule 12(b)(6) on the grounds that the Complaint fails to allege facts necessary to support the essential elements of a RICO claim. The Court agrees, and finds that Rosner's RICO claim must be dismissed on the ground that the pleadings do not assert facts that sufficiently establish the essential

-17-

elements of a RICO cause of action under 18 U.S.C. § 1962 ("§ 1962").

## 1. Legal Standard

For purposes of ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). However, a plaintiff's pleading obligations require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (stating that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). The Second Circuit has interpreted the Supreme Court's opinion in Twombly as "not requiring a universal standard of heightened fact pleading, but instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

## 2. Civil RICO Claim

In order state a private claim for damages under RICO, a

-18-

plaintiff must plead (1) the defendant's violation of § 1962 and (2) an injury to the plaintiff's business or property caused by the defendant's RICO violation. See Commercial Cleaning Servs. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001) (citing First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994)). To satisfy the first burden, a plaintiff must establish that the defendant has violated the substantive RICO statute, that is, the criminal provisions of the statute. In doing so, the plaintiff must allege the existence of seven requisite elements identified by the Second Circuit in Moss v. Morgan Stanley, Inc., 719 F.2d 5 (2d Cir. 1983). Those factors are:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce ....

Id. at 17 (quoting § 1962(a)-(c). To satisfy the second burden, a plaintiff must demonstrate a resulting injury to plaintiff's business or property by reason of a violation of § 1962. See id.

Rosner specifically alleges a violation of § 1962(a) and § 1962(c), as well as a conspiracy to violate § 1962(c) under § 1962(d). Because the Court finds that Rosner does not sufficiently allege a violation of § 1962(a) or § 1962(c), the Court need not consider § 1962(d), as a complaint must

adequately state a claim under §§ 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d). See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 164 (2d Cir. 2004) ("[B]ecause Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the ... dismissal of the RICO conspiracy claims."); Zhu v. First Atl. Bank, No. 05 Civ. 96, 2005 WL 2757536, *3 (S.D.N.Y. Oct. 25, 2005) (citing Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 659, 658 (S.D.N.Y. 1996) ("[Plaintiff]'s failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), (b) or (c) necessarily dooms any claim she might assert under § 1962(d).")).

The RICO analysis is thus limited to a discussion of Rosner's claim under § 1962(a) or § 1962(c).

a. Existence of a RICO Enterprise

Rosner alleges that BoC, IFS, and Siu Lap were an "enterprise" within the meaning of 18 U.S.C. § 1961(4). The statute defines an "enterprise" to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. See Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984) (quoting 18 U.S.C. § 1961(4)). The Supreme Court has explained that a RICO enterprise is "a group of persons associated together for a

common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." First Capital, 385 F.3d at 173 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

Rosner states in conclusory fashion that BoC, IFS, and Siu Lap were an enterprise. The only factual allegation supporting this claim is that BoC provided "indispensable banking services" to IFS and Siu Lap. The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose to violate RICO.

Furthermore, the Corrected Complaint offers no facts relating to how BoC improperly functioned as a unit with IFS and Siu Lap, or the organization or hierarchy of the alleged enterprise. See id. at 174-75 (finding no enterprise where plaintiffs "failed to provide [the Court] with any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise ... from which [the Court] could fairly conclude that its members function as a unit").

Accordingly, Rosner fails to sufficiently allege the "enterprise" element of the RICO claims.

## b. Pattern of Racketeering Activities

BoC also moves to dismiss on the grounds that Rosner has failed to provide sufficient evidence of a pattern of racketeering activity involving BoC in the alleged enterprise. Under RICO, a "pattern of racketeering activity" consists of "at least two acts of racketeering activity" within a ten-year period. See 18 U.S.C. § 1961(5); Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496 n.14 (1985); McLaughlin v. Anderson, 962 F.2d 187, 190 (2d Cir. 1992). The underlying racketeering activities, as defined in 18 U.S.C. § 1961(1), alleged by Rosner are that BoC engaged in (1) mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, (2) money laundering in violation of 18 U.S.C. §§ 1956 and 1957, and (3) transportation of stolen goods in violation of 18 U.S.C. § 2314. In McLaughlin, the Second Circuit determined that the heightened pleading requirements of Rule 9(b) apply only to RICO predicate acts based on fraud or mistake. See 962 F.2d at 194; see also Levine v. Torino Jewelers, Ltd., No. 05 Civ. 3159, 2006 WL 709098 (S.D.N.Y. Mar. 22, 2006). Therefore, Rosner's other allegations of racketeering, namely money laundering and transportation of stolen goods, are subject to the more lenient pleading requirements of Federal Rule of Civil Procedure 8(a). However, even under this more lenient standard, Rosner fails to adequately plead the predicate acts sufficient to constitute a pattern of racketeering activity.

Rosner insufficiently alleges the scienter element of fraud, money laundering, and transportation of stolen goods. See S.O.K.F.C. Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996) ("A complaint alleging mail or wire fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.") (citations omitted); Eastman Kodak Co. v. Camarata, No. 05 Civ. 6384, 2006 WL 3538944, at *5 (W.D.N.Y. Dec. 6, 2006)("There ... are two components of the state-of-mind element of ... a [money laundering] claim: (1) that the defendant knew that the funds involved in the transaction were proceeds of some unlawful activity, and (2) that the defendant knew of the transaction's obfuscatory purpose.") (internal quotations omitted) (citing United States v. Maher, 108 F.3d 1513, 1525-28 (2d Cir. 1997)); Lesavoy v. Lane, 304 F. Supp. 2d 520, 533 (S.D.N.Y. 2004) ("To establish a violation of section 2314, it must be shown (1) that the defendant transported 'goods, wares, or merchandise' in interstate or foreign commerce; (2) that those goods have a value of $5,000 or more; and (3) that the defendant knew 'the same to have been stolen, converted or taken by fraud.'" (quoting Kades v. Organic Inc., No. 00 Civ. 3671, 2003 WL 470331, at *9 (S.D.N.Y. Feb. 24, 2003)).

Each of these offenses requires intent on the part of the

-23-

defendant, an element analyzed using the same "motive and opportunity to commit fraud" or "strong circumstantial evidence of conscious misbehavior or recklessness" standard discussed previously in connection with Rosner's aiding and abetting fraud claim. See Zhu, 2005 WL 2757536, at *3 (citing Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996)). Having failed to justify an inference of intent for his aiding and abetting fraud claim, Rosner cannot rely on mail and wire fraud, money laundering, or transportation of stolen goods as predicate acts because the scienter element of those acts is supported by the same underlying factual allegations and analyzed under analogous principles. See Greene v. Hanover Direct, Inc., No. 06 Civ. 13308, 2007 WL 4224372, at *5 (S.D.N.Y. Nov. 19, 2007).

Because Rosner has failed to adequately allege any RICO predicate acts, he necessarily fails to allege a pattern of racketeering activity, and his RICO claim must be dismissed.

c. RICO Section 1962(a) Claim

Even if Rosner had established a pattern of racketeering activity, his § 1962(a) claim would fail because it does not allege the requisite injury. Section 1962(a) prohibits investing in an enterprise income derived from a pattern of racketeering activity. See 18 U.S.C. § 1962(a); Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990) ("[T]he essence of a violation of § 1962(a) is not commission of predicate acts

-24-

but investment of racketeering income."). "Accordingly, to
state a claim under 1962(a), a plaintiff must allege an injury
resulting from the defendant's investment of racketeering
income in an enterprise (i.e., an 'investment injury'),
separate and apart from any injury caused by the predicate
acts themselves." OSRecovery, Inc. v. One Groupe Int'l., Inc.,
354 F. Supp. 2d 357, 371 (S.D.N.Y. 2005) (citing Ouaknine, 897
F.2d at 83); see also Globe Wholesale Tobacco Distributors
Inc. v. Worldwide Wholesale Trading Inc., No. 06 Civ. 2865,
2007 WL 2826630, at *5 (S.D.N.Y. Sept. 28, 2007) (dismissing
plaintiff's § 1962(a) claims because "the complaint does not
allege any facts to support an inference that the plaintiff
suffered an investment injury distinct from any injury
suffered as a result of the predicate acts"); Allen v. New
World Coffee, Inc., No. 00 Civ. 2610, 2002 WL 432685, at *2-3
(S.D.N.Y. Mar. 19, 2002) (noting that "§ 1962(a) aims at
punishing not the predicate offenses but the investment of the
ill-gotten gains of the predicate offenses" and finding that
plaintiff failed to allege an injury distinct from the
predicate activity).

With respect to Rosner's § 1962(a) claim, the Corrected
Complaint states only bare bones allegations with a formulaic
recitation of the elements of the cause of action, and fails
to make any statements of fact that plausibly support the
conclusion that BoC derived income from a pattern of

-25-

racketeering activity and invested such income. Additionally, Rosner merely states that "[inventors were injured as a result of BoC's conduct," but does not allege that any specific injuries were caused by BoC's investment of racketeering income. (Corrected Complaint ¶ 99.) Thus, the Corrected Complaint does not state an "investment injury" distinct from an injury caused by the predicate acts alone.

Accordingly, BoC's motion to dismiss Rosner's claim alleging a violation of § 1962(a) must be granted.

### d. RICO Section 1962(c) Claim

In contrast to § 1962(a), which prohibits investing income from a pattern of racketeering activity in an enterprise, RICO § 1962(c) prohibits conducting or participating in the affairs of an enterprise through a pattern of racketeering activity. See 18 U.S.C. § 1962(c). Even if Rosner had adequately alleged a pattern of racketeering activity, his § 1962(c) claim would necessarily fail, as the Corrected Complaint does not sufficiently allege BoC's participation in a RICO enterprise.

Under Reves v. Ernst & Young, 507 U.S. 170, 179 (1993), an alleged RICO defendant must have had "some part in directing" the "operation or management" of the enterprise itself to be liable. Rosner's sole allegation is that BoC provided banking services that aided in the perpetration of the fraudulent scheme. Regardless of how indispensable or

-26-

essential such services may have been, rendering a professional service by itself does not qualify as participation in a RICO enterprise. See Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003) (citing Indus. Bank v. Baltic Fin. Corp., 93 Civ. 9032, 1994 WL 286162, at *3 (S.D.N.Y. July 27, 1994)("That [defendant] Bank provided banking services – even with knowledge of the fraud – is not enough to state a claim under section 1962.")); Dietrich v. Bauer, 76 F. Supp. 2d 312, 347 (S.D.N.Y. 1999)("RICO liability may not be imposed on a defendant who merely carries on its own professional activities."); Department of Econ. Dev. v. Arthur Andersen & Co., 924 F. Supp. 449, 466-67 (S.D.N.Y. 1996) ("Providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise .... Even [the] provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise." (internal quotation marks and citations omitted); LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."). As such, BoC's motion to dismiss Rosner's RICO claim predicated on § 1962(c) is granted for failure to sufficiently state an essential

element of a RICO claim.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 7) of defendant Bank of China, to dismiss the complaint herein is GRANTED; and it is further

**ORDERED** that plaintiff Brian Rosner, acting as Permanent Equity Receiver for the entities listed in the caption of the case, shall have leave to file, within fifteen (15) business days of the date of this Order, an amended complaint repleading the fraud claims dismissed herein pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead with sufficient particularity.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: New York, New York
       19 December 2007

Victor Marrero
U.S.D.J.